UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BADAYAH BRAZELTON, | ) |
| | ) |
| Petitioner | ) |
| | ) |
| vs. | ) CAUSE NO. 3:10-CV-382 RM |
| | ) (Arising out of 3:06-CR-144 RM) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent | ) |

OPINION and ORDER

A jury convicted Badayah Brazelton on March 14, 2007 of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 1); possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 2); and possession with intent to distribute 50 grams or more of cocaine base (Count 3), possession with intent to distribute cocaine (Count 4), and possession with intent to distribute marijuana (Count 5), all in violation of 21 U.S.C. § 841(a)(1). He was sentenced on June 13, 2007 to a total term of 425 months' imprisonment, to be followed by a ten-year supervised release term, and was ordered to pay a special assessment of $500.00. On appeal, where different counsel represented Mr. Brazelton, the court of appeals remanded his case for resentencing under Kimbrough v. United States, 552 U.S. 85 (2007). *See* United States v. Brazelton, 557 F.3d 750, 755 (7th Cir. 2009). On September 2, 2009, this court reduced Mr. Brazelton's sentence on Count 3 from 365 to 240 months, which produced a total term of 300 months' imprisonment; an amended judgment

was entered that same day. Mr. Brazelton didn't appeal his amended sentence, but now asks the court to vacate his sentence under 28 U.S.C. § 2255.

Mr. Brazelton advances four arguments: he claims his sentence is unlawful because of an intervening change in the law and his trial counsel was ineffective for not arguing that the crack/power cocaine disparity is unconstitutional based on race, not arguing that he couldn't be subjected to two consecutive minimum mandatory sentences, and not seeking to have Juror Four excused for cause. The government filed its response to Mr. Brazelton's petition, and Mr. Brazelton filed his reply.[1]

I. LEGAL STANDARD

A person convicted of a federal crime may attack his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, the court had no jurisdiction to impose such sentence, the sentence exceeded the maximum authorized by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A § 2255 petition will not be allowed to substitute for an appeal or to advance arguments that could have been made earlier. *See* Reed v. Farley, 512 U.S. 339, 354 (1994) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of *habeas corpus* will not be allowed to do service for an appeal." (*quoting* Sunal v. Large, 332 U.S. 174, 178 (1947))); Fountain v. United States, 211 F.3d 429, 433

---

[1] The court construes Mr. Brazelton's "Amended Petition and Memorandum of Law in Support of Motion to Vacate, Set Aside, or Correct Sentence," which raises no new claims, as his reply to the government's response.

2

(7th Cir. 2000) ("It is well-established . . . that a § 2255 motion is not a substitute for direct appeal. "). Constitutional claims not raised on direct appeal are barred unless the petitioner shows good cause and actual prejudice for not raising the issues on appeal. Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds*, Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994). Non-constitutional issues that could have been, but weren't, raised on direct appeal can't be raised in a § 2255 petition; there is no cause and prejudice exception for non-constitutional errors that could have been raised on appeal but were not. Arango-Alvarez v. United States, 134 F.3d 888, 891 (7th Cir. 1998). Issues already argued and decided on direct appeal can't be raised in a § 2255 petition without a showing of changed circumstances. Belford v. United States, 975 F.2d at 313. A claim of ineffective assistance of counsel not raised on direct appeal can still be raised in a § 2255 petition. Massaro v. United States, 538 U.S. 500, 504 (2003).

## II. Discussion

### A. Change in Law

Mr. Brazelton first says his sentence should be vacated based on the Fair Sentencing Act of 2010, which changed the drug quantities required to trigger mandatory minimum sentences. Mr. Brazelton says that because he challenged the powder vs. crack cocaine ratio at sentencing and on appeal, his claim has been preserved and under the 2010 Act the court must resentence him "without

3

regard to any minimum mandatory sentence mandated by 21 U.S.C. § 841(b)(1)(A)." The court can't agree.

In March 2007, Mr. Brazelton was found guilty of possession with intent to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and because he had a previous conviction for a felony drug offense he was sentenced to a statutory minimum sentence of 240 months. 21 U.S.C. § 841(b)(1)(A). At the time of Mr. Brazelton's sentencing, 21 U.S.C. § 841(b)(1)(A) provided that a person who distributes 50 grams or more of crack cocaine and has a prior conviction for a felony drug offense "shall be sentenced to a term of imprisonment which may not be less than 20 years." The Fair Sentencing Act of 2010 amended the sentencing provisions of 21 U.S.C. § 841(b)(1)(A) by raising the amount of crack cocaine necessary to trigger the twenty-year mandatory minimum for a person with a prior felony drug conviction from at least 50 grams to at least 280 grams. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, at § 2(a)(1) (2010). Mr. Brazelton claims the court should modify his sentence accordingly.

> The United States Code provides that
>
> [t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

4

1 U.S.C. § 109. Mr. Brazelton hasn't pointed to any provision of the Fair Sentencing Act of 2010 that expressly provides that that Act is to be applied retroactively to cases, like his, where final judgment has been entered. And courts that have addressed this issue have concluded that the 2010 Act doesn't operate retroactively. *See* United States v. Bell, 624 F.3d 803, 814 (7th Cir. 2010) ("[W]e conclude that the [Fair Sentencing Act of 2010] is not retroactive . . . . since the FSA does not contain so much as a hint that Congress intended it to apply retroactively."); *see also* United States v. Glover, No. 09-1725-cr, 2010 WL 4250060, at *2 (2d Cir. Oct. 27, 2010) ("The Act contains no express statement that it is intended to have retroactive effect nor can we infer such intent from its language. . . . Consequently, we must apply the mandatory minimum in effect at the time Baldwin committed the offense in question."); United States v. Brewer, 624 F.3d 900, 909 n.7 (8th Cir. 2010) ("[T]he Fair Sentencing Act contains no express statement that it is retroactive, and thus the "general savings statute," 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed."); United States v. Gomes, 621 F.3d 1343, 1346 (11th Cir. 2010) ("because the FSA took effect in August 2010, after appellant committed his crimes, 1 U.S.C. § 109 bars the Act from affecting his punishment"); United States v. Carradine, 621 F.3d 575, (6th Cir. 2010) ("The new law at issue here, the Fair Sentencing Act of 2010, contains no express statement that it is retroactive nor can we infer any such express intent from its plain language. Consequently, we must apply the penalty provision in place at the time Carradine committed the

crime in question."). Mr. Brazelton isn't entitled to the relief he seeks under the Fair Sentencing Act of 2010.

## B. Ineffective Assistance of Counsel

To succeed on his ineffective assistance of trial counsel claim, Mr. Brazelton must show, first, that his attorney's performance was deficient — "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" — and second, that counsel's deficient performance prejudiced his defense — "that counsel's errors were so serious as to deprive [the defendant] of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington, 466 U.S. 668, 687 (1984); *see also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."). A strong presumption exists that counsel performed effectively, and Mr. Brazelton "bears the burden of proving otherwise." United States v. Banks, 405 F.3d 559, 568 (7th Cir. 2005).

The court evaluates reasonableness of counsel's performance "from counsel's perspective at the time of the alleged error and in light of all the circumstances." Kimmelman v. Morrison, 477 U.S. at 381. "Even if counsel's performance was deficient, a petitioner must also show that 'there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' meaning 'a probability sufficient to undermine confidence in the outcome.'" Eckstein v. Kingston, 460 F.3d 844, 848 (7th Cir. 2006) (*quoting* Strickland v. Washington, 466 U.S. at 694). "In weighing the effect of counsel's errors, the court must consider the totality of the evidence . . . . A verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." Eckstein v. Kingston, 460 F.3d at 848 (*quoting* Hough v. Anderson, 272 F.3d 878, 891 (7th Cir. 2001)).

Mr. Brazelton's claim of ineffective assistance of counsel is premised on his complaints that counsel (1) didn't argue that the sentencing disparity between powder and crack cocaine is unconstitutional, (2) didn't argue that only one mandatory minimum sentence could be imposed, and (3) didn't seek to have Juror Four excused for cause. The court addresses those claims separately.

*(1) Crack vs. Powder Cocaine Ratio*

Mr. Brazelton maintains his counsel was ineffective for not raising the issue of the unconstitutionality of the sentencing disparity between powder and crack cocaine and for not arguing that 21 U.S.C. § 841 and U.S.S.G. § 2D1.1 were enacted to punish African Americans more harshly than other races. To the extent Mr. Brazelton argues that his counsel didn't object to the powder/crack cocaine sentencing disparity, he is mistaken – his trial counsel objected to the crack-powder cocaine disparity at sentencing, *see* Sent. Memo. (June 13, 2007), at 2

7

("Mr. Brazelton objects to the guidelines' conversion because they are based on a 100:1 ratio between crack cocaine and powder cocaine, but the law is against Mr. Brazelton on that issue."), and his appellate counsel raised the issue on appeal, which resulted in Mr. Brazelton's September 2009 resentencing. *See* United States v. Brazelton, 557 F.3d 750 (7th Cir. 2009). Mr. Brazelton's sentence was reduced based on the decision in Kimbrough v. United States, 552 U.S. 85 (2007), that sentencing courts have discretion to not apply the 100:1 ratio that controlled Mr. Brazelton's original sentencing. That Mr. Brazelton's sentence wasn't reduced further doesn't show ineffective assistance of counsel. Mr. Brazelton hasn't demonstrated that his counsel provided ineffective assistance relating to the crack vs. powder cocaine disparity. *See* United States v. Rezin, 322 F.3d 443, 446 (7th Cir. 2003) (if an argument "does not prevail, then the lawyer is not guilty of ineffective assistance, because ineffective assistance requires both that the lawyer fail to come up to minimum professional standards for the representation of criminal defendants and that the failure be prejudicial").

To the extent Mr. Brazelton claims his counsel should have challenged the constitutionality of the crack-powder cocaine issue on the basis of race, case law doesn't support his claim. *See* United States v. Booker, 73 F.3d 706, 710 (7th Cir. 1996) (collecting cases that have rejected constitutional challenges on the grounds of a racially disparate impact of crack penalties); United States v. Maxwell, 25 F.3d 1389, 1401 (8th Cir. 1994) ("Congress provided for more severe penalties for all, not merely some, cocaine base offenders."); United States v. Bynum, 3 F.3d 769,

774-775 (4th Cir. 1993) (concluding that a downward departure based on a racially disparate impact would impede Congress's policy decision to treat cocaine base more harshly than powder cocaine). A decision by counsel to not raise a meritless argument doesn't amount to ineffective assistance. *See* United States v. Souffront, 338 F.3d 809, 827 (7th Cir. 2003) ("Defendants' position is without merit and we hope that future defendants will refrain from presenting such frivolous arguments supported by absolutely no authority and contrary to clearly-stated precedent."); United States ex rel. Franklin v. Gilmore, 993 F. Supp. 1162, 1180 (N.D. Ill. 1998) ("[T]he Sixth Amendment does not require counsel to . . . press meritless arguments before a court."); Duncan v. United States, No.3:08-CV-352, 2010 WL 405559, at *2 (N.D. Ind. Jan. 25, 2010) ("In light of [Supreme Court] precedent [foreclosing defendant's argument], it would have been frivolous to pursue the argument [the defendant] proposes."). Mr. Brazelton can't show that counsel was ineffective for not raising the issue of racial discrimination in connection with the powder/crack cocaine disparity, nor can he show any reasonable probability that pursuing a frivolous argument would have resulted in a lesser sentence. He isn't entitled to the relief he seeks based on his argument relating to the crack/powder cocaine disparity.

*(2) Imposition of Mandatory Minimum Sentences*

Mr. Brazelton claims his counsel was ineffective because he didn't argue that Mr. Brazelton could only be subjected to one mandatory minimum term of imprisonment. Mr. Brazelton claims that under the "except clause" of 18 U.S.C.

9

§ 924(c), he can only be subjected to one minimum mandatory sentence. In reliance on United States v. Whitley, 529 F.2d 150 (2d Cir. 2008), Mr. Brazelton claims that "it well known that other circuits [have] sustained" his argument on this issue, but at the time of Mr. Brazelton's September 2009 sentencing, the holding in Whitley had been rejected in this circuit. *See* United States v. Easter, 553 F.3d 519, 525-526 (7th Cir. 2009) ("We do not agree with the Whitley opinion . . . . [I]t appears to us that the reading given in Whitley thwarts Congress's purpose in enacting § 924(c)(1) and causes illogical results."); *see also* United States v. Boyd, 608 F.3d 331, 333 (7th Cir. 2010) ("Boyd asks us to overrule Easter, but we believe its reasoning remains sound. We have consistently declined to overrule the decision, and we decline again here."). More importantly, the United States Supreme Court recently rejected Mr. Brazelton's argument. *See* Abbott v. United States, __ U.S. __, __, 131 S. Ct. 18, 23 (2010) ("We hold . . ., in line with the majority of the Courts of Appeals, that a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction."). Mr. Brazelton's counsel had no obligation to raise a meritless argument and wasn't ineffective for not having done so. *See* United States v. Rezin, 322 F.3d 443, 446 (7th Cir. 2003) ("[a] defendant's lawyer has, it is certainly true, no duty to make a frivolous argument"). Mr. Brazelton can't establish unreasonable performance by his counsel or that he suffered any

prejudice, and his claim that his counsel was ineffective in this regard is without merit.

### *(3) Juror Challenge*

Lastly, Mr. Brazelton says his counsel was ineffective for not challenging Juror Four, who, during voir dire, told the court that he was a cousin of one of the people named as a potential witness in the case. Mr. Brazelton claims that

> The implied bias of Juror Number Four is apparent despite [the juror's] protestations to the contrary. Counsel had a duty to remove from the jury any member who could not sit as an impartial trier of fact. Given that the juror's cousin was allegedly shot by petitioner, it is hard to believe that the juror's decision would not be influenced.

Reply, at 14. Mr. Brazelton concludes that his counsel's decision to not seek to excuse Juror Four was prejudicial because "Juror Number Four was permitted to participate in a verdict leading to a 300-month sentence for petitioner." Reply, at 13.

The trial record establishes the following. Before the jury selection process, the venire members took oath to truthfully answer the court's questions relating to their qualifications to serve as jurors. The court posed general questions to panel, posed questions to each person individually, and then read the names of potential witnesses without disclosing any information about what connection any of those people may have had with the case. The witness list included the name Brandon Byrd, who was the victim of the shooting that led to Mr. Brazelton's arrest. When the court asked the jurors, "Do any of you know or think you might

11

know any of those people?" Juror Four raised his hand and said he thought he knew Brandon Byrd. The court then asked:

| | |
|---|---|
| THE COURT: | The Brandon Byrd that you know, how old a man would he be? |
| JUROR FOUR: | He'd be in his twenties. |
| THE COURT: | And do you know where he lives? |
| JUROR FOUR: | Michigan City. |
| THE COURT: | Does that sound like it may be the same Brandon Byrd? |
| AUSA BARRETT: | It does, Your Honor. |
| THE COURT: | Okay. And obviously as a Robert Miller, I understand there are people who share names. If this turns out to be the same Brandon Byrd that you know – and I don't know whether it would be, but we can't rule it out at this point – if he were to testify in this case, would your knowledge of Mr. Byrd be such that you would give his testimony some different amount of weight – and I'm not going to ask whether more weight or less weight, just different – than you would that of a witness you didn't know? |
| JUROR FOUR: | No. |
| THE COURT: | Okay. And how is it that you know Mr. Byrd? |
| JUROR FOUR: | I believe he's related to me. |
| | * * * |
| THE COURT: | How closely? |
| JUROR FOUR: | Like a second cousin. |
| THE COURT: | Okay. Do you see him frequently or at family – |
| JUROR FOUR: | No, I haven't seen him in years. |
| THE COURT: | Okay. So he's related, but it's not a close social relationship as opposed to a family relationship? |
| JUROR FOUR: | Yes. |

Trial Tr., at 50-51. Juror Four wasn't asked any further questions, and no further information about Brandon Byrd or his involvement with Mr. Brazelton was disclosed to Juror Four or any of the other jurors. Mr. Brazelton's counsel didn't strike Juror Four from the panel. Before the trial began, Juror Four and his fellow jurors took an oath to render a verdict based on the evidence presented at trial

12

and the law applicable to the case. Brandon Byrd didn't testify at trial and no other witness presented any testimony relating to Mr. Byrd.

Mr. Brazelton raised the issue of Juror Four on appeal (though not in the context of an ineffective assistance of counsel claim), where he argued that his Sixth Amendment right to an impartial jury had been violated when Juror Four was allowed to serve on the jury. The court of appeals stated that

> [Brandon] Byrd, the victim of the original (but uncharged) crime, could not himself sit on [Mr.] Brazelton's jury because his vote on the charged crimes might possibly be influenced by a desire to extract punishment for the uncharged crime. Based on his history with [Mr.] Brazelton, [Brandon] Byrd could not sit even if he swore to be impartial because the law errs on the side of caution. For the same reasons, extending the disqualification to the victim's second cousin might seem prudent. On the other hand, though, the record contains no evidence that Juror Number Four even knew that [Mr.] Brazelton was once suspected of the shooting of [Brandon] Byrd, [Juror Number Four's] second cousin. Furthermore, no offer of proof to the court was ever made. Nor was anything said during the trial that would have given Juror Number Four this information as [Brandon] Byrd's name was not even mentioned after voir dire, and the mention in voir dire gave no indication of *how* [Brandon] Byrd was involved in this case.

United States v. Brazelton, 557 F.3d at 754 (citations omitted; emphasis in original).

"To establish ineffectiveness of counsel, [Mr. Brazelton] must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." Massaro v. United States, 538 U.S. 500, 505 (2003). Here, as in all cases, the jurors, including Juror Four, took two oaths – one to answer the court's voir dire questions truthfully and the second to faithfully perform their duty as jurors. Juror Four disclosed that Brandon Byrd was his second cousin;

13

he told the court he hadn't seen Mr. Byrd in years; and he further stated that he wouldn't weigh testimony by Mr. Byrd differently than any other testimony presented at trial. Mr. Brazelton hasn't alleged or argued that Juror Four's statements in that regard were untruthful nor has Mr. Brazelton argued or presented any evidence showing that Juror Four knew about and was negatively influenced by Brandon Byrd's involvement with Mr. Brazelton. *See* Murphy v. Florida, 421 U.S. 794, 799-800 (1975) ("'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" (*quoting* Irvin v. Dowd, 366 U.S. 717, 723 (1961))). Based on Juror Four's answers to the voir dire questions – statements made under oath – the court can't say counsel's decision to not strike Juror Four was unreasonable. *See* United States v. Viezca, 265 F.3d 593, 601 (7th Cir. 2001) (trial judge's specific questions to juror about the extent of his knowledge of the case and careful observation of the juror's responses and demeanor in answering the questions convinced the appellate court that the juror had answered the questions during jury selection "in a forthright and honest manner").

Even if the court were to assume that counsel's decision to not strike Juror Four from the jury panel wasn't a reasonable strategy, Mr. Brazelton must also show that but for counsel's unprofessional error, "there is a reasonable probability

that the results would have been different." Berkley v. United States, 318 F.3d 768, 774 (7th Cir. 2003). Mr. Brazelton hasn't done so: he hasn't set forth evidence to show that had Juror Four been stricken there was a reasonable probability of a different outcome; he hasn't outlined facts to establish that the proceedings were fundamentally unfair or the result unreliable (especially in light of the overwhelming evidence of guilt presented by the government without any testimony from or about Brandon Byrd); and he hasn't presented evidence to support his summary conclusion that the "implied bias of Juror Number Four is apparent." *See* United States v. Davis, 15 F.3d 1393, 1412-1413 (7th Cir. 1994) ("[T]he duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality. In other words, there must be something more than mere speculation." (*quoting* United States v. Barshov, 733 F.2d 842, 851 (11th Cir. 1984))). Mr. Brazelton hasn't demonstrated a reasonable probability that the result would have been different had Juror Four not served as a juror.

Mr. Brazelton hasn't carried his burden with respect to the performance or the prejudice prong as required by Strickland v. Washington, 466 U.S. 668, 687 (1984), so he can't prevail on his ineffective assistance of counsel claim.

III. CONCLUSION

Based on the foregoing, the court DEEMS Mr. Brazelton's amended petition, filed September 27 [docket # 94], to be a reply brief, and DENIES his petition to

15

set aside, vacate, or correct his sentence pursuant to 28 U.S.C. § 2255 [docket # 91].

SO ORDERED.

ENTERED:   December 21, 2010  


                                   /s/ Robert L. Miller, Jr.  
                                Judge  
                                United States District Court

cc:   B. Brazelton  
      AUSA Barrett